Thomas R. Miller, Thomas T. Patton, Wm. Patton, Ephraim Clayton and Javan Trammell; Samuel Hefner, Reuben Clayton, James Judge, James W. Patton and Charles Moore, on the 23rd of July, 1842, formed a copartnership for the manufacturing of iron. The capital of the said company was to be $5000, to be made up by shares of $100. The plaintiff, Miller, subscribed three shares, James W. Patton seven shares, Moore five shares, and the other persons named above subscribed the remainder in proportions agreed on by them. Subsequently, the capital was increased, and Miller subscribed two additional shares, James Patton and Moore subscribed five shares in addition. The defendants Patton and Moore were the owners in fee of 117 acres of land lying on Davidson's river, which is particularly described in the bill, and the plaintiff, Miller, claimed, by purchase at execution sale, 1,500 acres, adjoining thereto, which is also described in the bill, and on the 30th of that month, July, 1842, they contracted to sell these tracts to the company at the price of $3000, on a credit of one and two years, in equal instalments, with interest from the time of the sale till the same was paid, and executed their covenant, in which they obliged themselves to convey the 117 acres first above mentioned, in fee, withwarranty of title, and release all plaintiff Miller's title and interest in the residue. The *Page 432 
plaintiff alleges that it was agreed between the three that, out of the purchase-money, Patton and Moore were to receive enough to pay a debt due from plaintiff's father to one Murphy, for which they were sureties, but not to go beyond $2300, and the remainder was to go to the plaintiff for his claim in the land.
It appears from the pleadings, that whenever instalments were called for by the company, the assessments on the said Patton, Moore and plaintiff, were not to be required in cash, but were to be regarded as paid at the time they were made payable, and the amount deducted from the purchase-money due for the said land. Instalments were called for, but the company needing money very much, the plaintiff and defendants Moore and Patton waived their rights under the original agreement, and paid 30 per cent. in cash. The remainder of their stock was paid for by deducting the same from the money due them for the land. In January, 1847, the company was incorporated by an act of the General Assembly, under the name and style of the Davidson River Manufacturing Company, which charter was accepted by the company then existing, on the 30th of March, 1847, and the corporation duly organized by the appointment of officers and enactment of by-laws. The incorporated company succeeded to the rights of the former company, and became responsible for its debts, and, amongst these debts, the sums due to the plaintiff and defendants Moore and Patton. It is further alleged that, besides the 70 per cent. deducted for their stock subscription, neither the plaintiff nor the defendants Moore and Patton, has received any part of this debt, and that the balance due after such deduction, is $1850, which the said incorporated company justly owes them.
At Spring Term, 1850, of Henderson Superior Court, the plaintiff, Miller, recovered judgment against the company for the sum of $432,55-100, with interest. He took out execution upon the same, and had it levied on all the property of the said corporation liable to execution, which was sold and bid off by the plaintiff, and the sum thus realized was at first *Page 433 
applied to the satisfaction of the execution, and he alleged that there was yet remaining unpaid of this judgment about $200; that the lands held by the said company were improved in value, and that they are now sufficiently valuable to pay the whole of the plaintiff's judgment for the purchase-money due him. The prayer of the bill is for and account of the affairs and dealings of the Davidson River Manufacturing Company, the amount due to the plaintiff and the defendants Moore and Patton, and the proportion due to each, and for a settlement of the remainder due him out of the land held by the said company under the title bond made by the plaintiff and defendants.
The answer of the defendants Moore and Patton states that they had become liable, as sureties of John Miller, the father of the plaintiff, and that, to save themselves from loss, they bought his land (the said 117 acres,) at public sale, and that the plaintiff had purchased the adjoining land (the 1500 acres) at execution sale, and it was agreed between the three that the land thus held by them should be conveyed to the company at the price of $3000; but they deny that the division was to be made as claimed by him, but that the defendants Moore and Patton were first to receive the amount of their liability for John Miller, which, it was thought, would not amount to more than $2500, and the plaintiff was to receive what he had paid on his bid for the other land, which, with interest, it was thought, would amount to less than $100, and the remainder was to be divided into three equal parts, each one to take a third.
They state that the plaintiff had been employed as agent and manager of the concern, and that, having managed it very badly and got it in debt, he brought suit for his salary and recovered the judgment mentioned in his bill; that he had the effects of the company levied on, and sold all he could have levied on at an undervalue, and bid it in himself. This was between the obtaining the judgment in his favor, (Spring Term, 1850,) and filing his bill, (Fall Term, 1850.) It is further alleged by them, that, in order to extricate the company from its *Page 434 
difficulties, it was agreed, in 1849, to borrow money from the bank at Asheville, and, as the bank refused to take the note of the corporation, a note was made in the name of Ephraim Clayton as principal, and the defendants Moore and Patton as sureties, and, at a general meeting of the stockholders, at Asheville, in September, 1849, it was resolved that all the property and effects of the company should stand pledged to secure the payment of the said debt, and save harmless, the said Clayton, Patton and Moore. There being some informality in the wording of this resolution, it was again brought before the body of stockholders in April, 1851, and modified so as to express its true purpose, which was to the effect as stated; at both which meetings the plaintiff was present and concurred in the measure. In pursuance of this resolution, a mortgage, or deed of trust, was drawn up embracing these purposes, and was duly registered. As one of the means for extricating the corporation from its difficulties, it was determined to purchase the ore-bank on which they had to rely for their supply of material, and $600 of the money thus raised, was appropriated to this purpose. Of the property which the plaintiff had levied on and sold, this ore-bank tract of land was the principal; this he bid off for $200.
The cause was set down for hearing on the bill, answers and exhibits, and sent to this Court. At August term of the court at Morganton, a decree was passed by consent, authorising the sale of the lands held by the company, by a commissioner of this Court; also it was referred to Mr.Dodge, the clerk at Morganton, "to ascertain and report how much is due from the defendant, the Davidson River Manufacturing Company, to the plaintiff, and to the defendants Charles Moore and James W. Patton, for the residue of the purchase-money for the said lands, and what proportion is due to each of them; what amount of the plaintiff's judgment against the Davidson River Manufacturing Company, referred to in the pleadings, remains unsatisfied, — distinguishing between the judgment for costs, principal and interest; and whether there existed and mortgage lien or other valid incumbrance on the *Page 435 
equitable title of the said Davidson River Manufacturing Company to the lands in the pleadings mentioned, or any part of them, in favor of any other person or persons, before the lien of the plaintiff attached by the commencement of this suit, and if so, the nature and extent of such lien or incumbrance, and the person or persons in whose favor it existed; and it is further ordered, that all the matters be held over for further consideration of the Court."
"And it is further ordered, adjudged and decreed, by consent of parties, that in the account, complainant's judgment shall not be credited with the amount of his bid for the lands of the defendant, but the sale shall be regarded as set aside, and the said lands shall be sold together with the other property hereinbefore referred to."
In obedience to this order, Mr. Commissioner Dodge reported, among other matters, that the deed in trust to Williams, to indemnify Clayton, Patton and Moore, gave them a lien, which overreached that created by the commencement of this suit. Plaintiff excepted to this part of the report.
The report, in making up the balances, treats the agreement to set aside the sale of the ore-tract as entire, whereas the plaintiff contends that the lien which was obtained by the levy of the execution, should have been reserved to him, and thus given him a preference as to that land. This is the ground of the second exception of the plaintiff. The cause was argued upon the exceptions at Morganton, at August term, 1857, by Baxter, for the plaintiff, and N.W. Woodfin, for the defendants, and removed to this Court for a second argument; but no counsel appearing for either party, the Court proceeded to consider the case.
The first exception is overruled. The corporation succeeded to the rights of the company in respect to the land mentioned in the pleadings — that is, an equity to have the legal title upon payment of the balance of the purchase-money. This equity, the corporation agreed should be mortgaged, or conveyed in trust as a security for the liabilities *Page 436 
incurred by Ephraim Clayton for its benefit; and Clayton acted upon the faith of this agreement. This was in 1849. Upon the maxim, equity considers that as done which ought to have been done, Clayton was entitled to this security at the date of the agreement, which over-reaches the lien of the plaintiff in respect to his judgment debt, which attached by the filing of the bill. The objection that the maxim cannot apply to an agreement to execute a mortgage or deed of trust, because such instruments are of no force or effect until registered, is met by the fact, that a mortgage or deed of trust conveying a chose in action, or an equity which is not subject to execution at law, does not come within the operation of the statutes in regard to registration. This is settled in Wallston v.Braswell, 1 Jones' Eq. 137. So, the deed of trust afterwards executed may be viewed, simply, in the light of a deed, in confirmation of the prior agreement, which, being in writing, signed by the party, or authorised agent, was sufficient to bind the corporation; of this, the plaintiff had full notice, and of course, he is bound thereby.
The second exception is also over-ruled. When the plaintiff agreed to release or waive his right in respect to the orebank, in order to make the property sell to advantage, he did not reserve any right which he had acquired by force of the levy of his execution; the levy or lien thereby was consequently waived. We are also of opinion, that the plaintiff had compensation for this waiver by being allowed the excess of the balance of the purchase-money, over and beyond the sum of $2500, in opposition to the answer, in which it is averred that such excess was by agreement to be divided between him and the defendants Moore and Patton.
PER CURIAM, Decree accordingly. *Page 437